Fowler, J.
 

 The parents of Carl Ziegler, a boy fifteen years of age, apply for a writ of
 
 habeas corpus.
 
 The function of the writ asked for is to require the person in whose behalf it is asked to be brought before the court for determination whether he is unlawfully imprisoned. Carl is held in the Southern Wisconsin Colony and Training School, a state institution, under commitment by the judge of the juvenile court of Milwaukee county. Under this fact, by rule too familiar to need citation of authority in its support, the only
 
 *467
 
 unlawfulness with which we are concerned is want of jurisdiction of the juvenile judge to issue the commitment. The récord on which the commitment was issued is before us. If that record shows that the court had jurisdiction the writ should be denied.
 

 The proceeding that resulted in the commitment was instituted under ch. 48, Stats. The chapter in its present form was enacted by ch. 524, Laws of 1939. The juvenile courts had then been long in existence and the power of juvenile judges to issue commitments prior to the 1939 enactment was limited to proceedings based on the delinquency, neglect, or dependency of children. Sec. 48.01 (5) (a), Stats. 1937. Their jurisdiction in such proceedings was exclusive. By the 1939 enactment par. 3 was added to sub. (5) (a) which gave to such judges exclusive jurisdiction of “Commitment of mentally defective and mentally disordered children under eighteen, the procedure to be pursuant to the provisions of' chapters 51 and 52.”
 

 Ch. 51, Stats., relates to “Hospitals and asylums for the insane” and prescribes the proceedings for commitment of persons to them. Sec. 51.01 (1), Stats. 1943, provided that “when a person is believed to be insane or senile, application may be made ... by any three citizens, one of whom is to be the nearest relative or friend available, ... to- the cotmty judge . . . for a judicial inquiry as to his mental condition and for an order of commitment. Provided, however, that when such person shall be a child under the age of eighteen, such application shall be made to the judge of the juvenile court. . . .”
 

 Ch. 52, Stats., relates to “Homes for the feeble-minded.” Sec. 52.01, Stats., provides the institution in which Carl is confined, and states the purpose of the institution to' be “to care for, train and have- the custody of mentally deficient and epileptic persons.” Sec. 52.02 is entitled: “Feeble-minded,
 
 *468
 
 epileptic; commitments, examinations” and provides that the provisions of ch. 51, Stats., “shall govern the examination, commitment and custody of mentally deficient and epileptic persons; but commitments of such persons shall be to one of the institutions named in section 52.01.”
 

 The petition in the instant proceeding was made in accordance with the statutes of 1943, which in the respects mentioned are as established by said ch. 524, Laws of 1939. It describes Carl as an epileptic person. By the statutes above cited the county judge in 1937 had and now has the jurisdiction to commit insane and epileptic persons and the proceedings for the commitment of epileptics are the same as those for commitment of the insane. Had Carl been eighteen it would be beyond question that the county judge of Milwaukee county would have had jurisdiction to commit him as an epileptic to the institution where he is confined. His epilepsy is undisputed and is conceded by his parents and by his guardian
 
 ad litem.
 
 It is manifest that by enactment of sec. 48.01 (5) (a) 3, Stats., it was the purpose of the legislature to give to judges of juvenile courts the jurisdiction to commit epileptics under eighteen that county judges had to commit epileptics eighteen or over. It is the manifest intent of all previously enacted statutes of the state relating to juvenile courts and their judges to place the exclusive jurisdiction of proceedings involving children of the ages specified therein in the juvenile courts or their judges. It is not to be assumed that in enacting said par. 3 the legislature intended to depart from its previous long and uniform course in providing for the handling of children and intended to except the commitment of children suffering from mental disorder resulting from epilepsy and leave their commitment to county judges. That when committed Carl was suffering from mental disorder resulting from epilepsy is plain from the record before Circuit Judge Schinz, the judge of the juvenile court of Milwaukee county who
 
 *469
 
 committed him. The physicians appointed to examine Carl and report to the judge testified at this hearing. At the time of their examination he was in the county general hospital where he had been taken from the detention home maintained by the county where juveniles are taken and held when charges of delinquency are made against them. He had been removed to the hospital because the authorities at the home could not govern him and had no means there of restraining him. He was having repeated seizures of epilepsy at the hospital; could not converse; was under restraint because he was so hard to handle; was of the explosive type; there was progressive severity of attacks; evidence of mental disturbance; excessive irritation. Carl’s mother admitted that he had stolen stamps from a dime store; had violated a bicycle ordinance; attempted to take a purse from a small boy; started a fire in a lavatory of a theater. Probation reports before the court showed Carl had set a fire on railroad property.
 

 Certain questions required by sec. 52.02, Stats., to be answered by the physicians appointed to examine persons, determination of whose mental condition and commitment is asked, throw light on what is meant by “mental disorder” in par. 3 of sec. 48.01 (5) (a). These questions and their answers in the instant case are:
 

 “(z)
 
 Q.
 
 When was mental abnormality first noticed?
 
 'A.
 
 Last month, (za)
 
 Q.
 
 State in what manner such mental abnormality has become and is manifest, that is, whether by way of mental disorder (insanity) or mental deficiency (feeble-mindedness)?
 
 A.
 
 Epileptic with mental deterioration. [The parentheses around ‘insanity’ and ‘feeble-mindedness’ are quoted from the statute.] (zb)
 
 Q.
 
 Did this mental abnormality first become apparent before or after the age of puberty ?
 
 A.
 
 After.”
 

 These questions show that within the purview of the statute epilepsy is a form of insanity, although it may not be so
 
 *470
 
 regarded in criminal prosecutions, as contended by applicants in their brief, citing
 
 Oborn v. State,
 
 143 Wis. 249, 276, 126 N. W. 737.
 

 We are not here concerned whether as matter of fact Carl is an insane person or his epileptic condition is such as to warrant his commitment for the protection of society. Error in that respect could only be reviewed by writ of error or appeal. .We are only concerned whether the judge of the juvenile court who committed him had jurisdiction to do so— whether the county judge would have had jurisdiction to commit him had he been over eighteen years of age.
 

 It should be noted that the applicants rest their claim of want of jurisdiction upon evidence given upon a hearing granted by the committing judge held in January, 1944, while the commitment was made in May, 1943. At this hearing, denominated by the applicants a “rehearing,” a physician of the institution wherein Carl is held testified as to his conduct and condition while in the institution. We discover nothing in ch. 51 or 52, Stats., that warrants a “rehearing” by the committing judge in cases of insanity or epilepsy or feeble-mindedness. There is nothing referring to a rehearing by a judge of a juvenile court except that in cases of “delinquent, neglected or dependent” children the court after first disposing of the case may make a “further disposition,” sec. 48.07 (1) (c), Stats., or grant a “rehearing,” sec. 48.07 (2a). The doctor on this so-called “rehearing” testified that Carl was not “insane” or “mentally defective,” but “shows a very serious conduct disorder, which was present prior to commitment, and it has reoccurred and reappeared at frequent intervals at the institution so that he is a menace to the patients and to the morale of the institution;” the “conduct disorder reoccurs;” may be daily or weekly. The doctor could not say whether there is “connection between his epilepsy and these disturbances; he has had one to three epileptic ‘seizures’ a month while in the.institution; is given medication to help
 
 *471
 
 control and decrease the number of the spells.” After the, doctor testified that the boy’s condition was not a “mental deficiency,” the question was put: “What about ‘mental disorder ?’ ” The answer was “It is not insanity.' But it is a personality defect, so that he does not respond or react as a normal individual should.” To the question “Is he suffering from a mental disorder ?” the doctor answered “I could not say if he is or is not.”
 

 It seems quite plain that what the doctor chose to call a “personality defect” by reason of which Carl does not “react as a normal individual should” is a mental disorder. At least Judge Schinz who conducted the hearing might well so find, whether the doctor could so say or not, especially as he based his determination upon the whole record which besides the facts above stated disclosed that Carl had on one occasion either attacked or threatened to attack his mother with a knife.
 

 While we are of opinion that the writ of
 
 habeas corpus
 
 must be denied, the denial does not prevent pursuit of any other remedy for Carl’s discharge that it may be considered that he has. Sec. 52.03 (3), Stats., provides that the superintendent of the institution in which he is held may discharge him upon the approval of the state department of public welfare. Sub. (4) of said section provides that if any person is sent to the institution “through mistake in the diagnosis of-his mental condition ... to be determined by the state department of public welfare acting as a commission in lunacy, such person ... if found neither insane nor mentally deficient . . . shall be returned to the county from which committed.” It may be noted that this section, in force under Stats. 1937, indicates that epilepsy involving mental disorder is the factual basis of commitment of epileptics to the institutions established by sec. 52.01, and this section was doubtless in the mind of the legislature when it passed sec. 48.01 (5) (a) 3. It may be also that sec. 51.11,
 
 *472
 
 which provides for “Re-examination of persons adjudged insane or senile” and for their discharge if found sane, may be invoked to procure Carl’s discharge — a point not raised and therefore not considered.
 

 By the Court.
 
 — The application for the writ of
 
 habeas corpus
 
 is denied.